UNITED STATES v. DES MOINES VAL. R. CO. et al.

(Circuit Court, N. D. Iowa, W. D.    November 5, 1895.)

No. 125.

1. PUBLIC LANDS—SUIT TO CANCEL PATENT—ACT OF MARCH 3, 1887.
  One F. made a homestead entry on public land in 1866, which was completed in 1871 and a patent issued to him in 1876. A patent for the same land was issued to the D. R. Co. in 1869 by the state of Iowa, under the grant to that state in aid of the improvement of the Des Moines river by the act of congress of 1846, extended in 1862. In 1871, as a result of negotiations between the state of Iowa and the United States in regard to the limits of the grant, certain selections by the state, including the land patented to F. and to the railroad company, were approved by the interior department, and confirmed to the state and its grantees by act of congress of March 3, 1871. In 1876 one S., holding the railroad com-

pany's title, brought a suit in equity against F. to quiet his title to the lands, and obtained a decree. In 1885 one W., having acquired the railroad company's title from S., sued F. in ejectment and recovered the land, F. having in both suits asserted his title under his homestead entry. In 1891 F. brought this suit in the name of the United States to cancel the patent to the D. R. Co. and to quiet F.'s title. *Held,* that the case could not be regarded as one brought by the United States under the act of congress of March 3, 1887, providing for the adjustment of railroad land grants, since the power given to the secretary of the interior by that act, to adjust grants and cause suits to be brought to cancel patents, is confined to grants previously unadjusted, and the effect of the approval of the secretary and the confirmation by congress in the act of March 3, 1871, was to adjust the grant to the state of Iowa, so far as concerned the lands the title to which was confirmed by the act.

2. SAME—PRACTICE.
It seems that, the United States having, after the act of March 3, 1871, no interest in the lands, the suit could not be brought in its name, and should be dismissed.

3. SAME—DEFENSES.
*Held,* further, that the effect of the clause in the act of March 3, 1871, saving the rights of parties claiming any of the lands under the homestead or pre-emption laws, or as swamp lands, was not to reserve any interest in such lands to the United States, but to the claimants, and accordingly, if the suit could be maintained in the name of the United States at all, it was open to the defenses of laches and the statute of limitations.

4. SAME—RES JUDICATA.
*Held,* further, that the adjudications in the equity suit and the action of ejectment brought by S. and W. against F. were a complete bar to F.'s claim, which could not be avoided by any supposed new right of action created by the act of March 3, 1887, since that act did not apply to a case where an adjustment of the grant had been made. and in this case there was in fact no readjustment.

5. SAME—LACHES.
*Held,* further, that in any event the delay of F. in bringing this suit amounted to laches sufficient to bar any claim.

Bill to cancel a patent to land and quiet title thereto. Submitted on pleadings and proofs.

Cato Sells, U. S. Dist. Atty., for the United States.

Swan, Lawrence & Swan, for complainant.

Wright, Hubbard & Yeoman and J. F. Duncombe, for Des Moines Valley R. Co. and James O. West.

C. H. Childs, for defendant Fairchild.

SHIRAS, District Judge. The pleadings and proofs in this case clearly show that the real controversy to be determined is one existing between James O. West and Sylvester M. Fairchild regarding the ownership of the N. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$ and lot No. 3, all of section 26 in township 99 N., of range 37 W. of fifth P. M., situated in Dickinson county, Iowa. Fairchild's claim to the land is based upon a pre-emption settlement made July 25, 1865, the declaratory statement being filed in the proper office August 24, 1865, which pre-emption claim was relinquished September 29, 1866, for the purpose of making a homestead entry thereon, which entry was duly made October 3, 1866, the final proof thereof being made October 26, 1871, and a patent in due form was issued to Fairchild under date of September 26,

1876. The claim of the defendant West is based upon the act of congress of 1846, granting to the state of Iowa certain lands for the improvement of the navigation of the Des Moines river; the act of July 12, 1862, extending the limits of the grant to the northern boundary of the state; a patent from the state of Iowa to the Des Moines Valley Railroad Company, which had become the beneficiary of the grant to the state, the patent being dated February 23, 1869, and covering selections made by the agent of the state in 1863, and confirmed by the interior department in 1866, it being stipulated in writing that the railroad title is vested in James O. West through conveyances made by several succeeding holders of the title.

It is urged in argument that this case must be regarded as one brought by the United States under the provisions of the act of congress adopted in 1887, and providing for the adjustment of railroad land grants. The proceeding is not of this character. While it is true there are to be found general averments in the bill which would be appropriate to a case of that nature, yet the bill as an entirety clearly shows that the sole purpose is to quiet the title to the specific realty, which is claimed by Fairchild on the one hand, and by West on the other. It is a case wherein Fairchild, using the name of the United States as his grantor, is seeking to have determined the ownership to a piece of land which was patented to him as a homestead.

By the first section of the act of congress of March 3, 1887 (24 Stat. 556), it is provided "that the secretary of the interior be, and is hereby authorized and directed to immediately adjust, in accordance with the decisions of the supreme court, each of the railroad land grants, made by congress to aid in the construction of railroads and heretofore unadjusted." The second section provides that, when it appears by such adjustment to be thus made by the secretary of the interior that any lands have been erroneously certified or patented by the United States, then a demand for the reconveyance thereof shall be made by the secretary of the interior, and, if such reconveyance is not made within 90 days, then the attorney general shall bring suit to cancel the patent or certificate and to restore the title to the United States. Under the provisions of this act it is clear that, before the attorney general can rightfully bring a proceeding to cancel a patent or certificate, action must first be taken by the secretary of the interior. The secretary must adjust the grant, applying in such adjustment the principles laid down in the decisions of the supreme court, and, having thus determined that lands have been wrongfully conveyed to the company, then a demand must be made by the secretary for a reconveyance of the land, and a suit cannot be properly brought until after 90 days have passed from the date of the demand.

Furthermore, the statute expressly limits the power of the secretary to adjust to those cases wherein a previous adjustment has not been had. In the bill filed in this case in the name of the United States, the acts of congress and of the legislature of the state of Iowa affecting the lands in dispute are set forth, and it is thus made to appear on the face of the bill that much contrariety of opinion had existed between the United States officials as to the true extent

of the grant known as the "Des Moines River Grant"; that finally, in 1862, congress passed an act extending the grant to the northern boundary of the state; that negotiations were had between the state of Iowa and the interior department which resulted in certain selections being made by the state of Iowa, as the lands to which it was entitled under the extended grant, and these selections were approved by the interior department; and by an act of congress approved March 3, 1871, the title of the lands thus selected was confirmed in the state of Iowa and its grantees. The title to these lands thus selected, approved by the interior department and confirmed by an act of congress, cannot be held to be unadjusted, within the meaning of the act of March 3, 1887. If it be true that the grant originally made to the state of Iowa to aid in improving the navigation of the Des Moines river, the limits of which were extended by the act of 1862, is a grant within the provisions of the act of 1887, and if it be true that the secretary of the interior has the right to undertake the adjustment of the grant as a whole, yet it is equally true that he cannot in such adjustment deprive the state of Iowa and its grantees of the title to the lands covered by the selections recited in the act of 1871, and the title to which was expressly confirmed by the acts in the state and its grantees. In any adjustment made by the secretary of the interior, he is bound to assume that these lands are covered by the grant, and of them the state and its grantees cannot be deprived by any adjustment proceedings undertaken under the act of 1887. The lands in dispute in this case form part of the selections confirmed by the act of 1871, and thus the bill shows on its face that they are not lands embraced within an unadjusted grant, but on the contrary they are lands which have been selected under the grant, and such selection has been confirmed by act of congress, and therefore the title thereto cannot be affected by any method of adjustment undertaken by the secretary of the interior. Furthermore, it is not averred in the bill that the secretary of the interior has ever undertaken to adjust the land grant in question, or that by means of any adjustment it has been shown that the lands in question were erroneously certified to the state of Iowa; and it thus appears that the claim made in argument that this bill is based upon the provisions of the act of March 3, 1887, is wholly unfounded, and the case must be treated as one wherein the real controversy is between Fairchild and West, and it would therefore seem to come within the rule announced in U. S. v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, that a suit in the name of the United States to annul a patent can only be brought when the government has an interest in the lands, or when fraud has been practiced, operating to the prejudice of the government, or when a duty to an individual or the public is incumbent upon the government, and that unless such cause exists for the action of the government the suit should be dismissed. But if the case can, in any fair sense, be said to be one maintainable in the name of the United States, it is of that class wherein the same defenses are open to the defendant, in the matter of laches, the statute of limitations, and the like, as would be the case if the suit was brought in the name of Fairchild. U. S. v.

Beebe, 127 U. S. 338, 8 Sup. Ct. 1083; U. S. v. Des Moines Nav. & Ry. Co., 142 U. S. 510, 12 Sup. Ct. 308; Curtner v. U. S., 149 U. S. 662, 13 Sup. Ct. 985, 1041.

On behalf of the complainants it is argued that this suit can be maintained in the name of the United States because in the act of 1871, confirming the title to the selections made on behalf of the state of Iowa, is found the proviso "that nothing in this act shall be so construed as to affect adversely any existing legal rights or the rights of any party claiming title or the right to acquire title to any part of said lands under the provisions of the so called homestead or pre-emption laws of the United States or claiming any part thereof as swamp lands." This proviso does not reserve any interest in the lands in the United States. The act confirmed the selections made, and in that sense conveyed all the right and title of the United States to the state of Iowa and its grantees, subject, however, to the rights of parties claiming under the homestead and pre-emption laws or under the swamp-land act. The reservation, however, is to the parties claiming under these acts, and not to the United States. If Fairchild had a legal or valid claim under the homestead acts to these lands, the claim would not be affected by the act of 1871, but any interest or title held by the United States would pass by the act to the state. The proviso in the act would not authorize the secretary of the interior, under the pretense of readjusting the land grant, to claim for the United States all lands covered by the act of congress of 1871, to which parties might assert claims under the homestead, pre-emption, or swamp-land acts. No other construction can be fairly put upon the act of 1871 than that it confirmed the title to the lands included in the selections therein named in the state of Iowa and its grantees, subject, however, to the rights of parties claiming under the homestead or pre-emption laws or under the swamp-land act. After the passage of this act it was not open to the interior department, under the act of 1887 or any other act, to question the title of the state or its grantees to the lands included in the act of 1871, or to attempt to reclaim them for the United States. It was, however, open to Fairchild or any other party to assert a claim arising under the homestead, pre-emption, or swamp-land acts, and therefore that is the real question involved in this controversy. If Fairchild, when the act of 1871 was passed, had a valid claim or title under the homestead act to the land in dispute, he was at full liberty to assert it, but it was a right which he could lose by failure to assert it in time, or of which he could be barred by an adverse adjudication.

In the answers filed in this case it is pleaded that in 1876 a suit in equity was brought by James and Joseph Stuart in the district court of Dickinson county, Iowa, in which county the lands in dispute are situated, against Fairchild and his wife, for the purpose of settling and quieting the title to these lands, the title based upon the grant to the state of Iowa, and known as the "Railroad Title," being then vested in said James and Joseph Stuart, and that a decree quieting the title in complainants was granted by the court. The evidence shows that this suit was brought for the purpose named;

that the defendants appeared and filed a cross bill setting up their title based upon the homestead entry and the final certificate issued thereon; that a full hearing was had, and a decree was entered quieting the title in the complainants, and forever enjoining the defendants Fairchild and wife from asserting any right to said lands. This decree was entered November 18, 1876, and it has never been reversed or annulled. The evidence shows that the court rendering this decree was a court of competent jurisdiction; that it had jurisdiction over the lands and over the parties to the suit; and no reason is shown why it is not in full force. It further appears that in March, 1885, the defendant West, who had purchased the premises from the Stuarts after the rendition of the decree of November 18, 1876, brought an action in ejectment in the district court of Dickinson county, Iowa, against Fairchild and his wife, to oust them from the possession of the lands, in which action, after a trial by jury, a judgment was rendered under date of October 2, 1885, in favor of West, the plaintiff therein, adjudging him to be the owner and entitled to the possession of the lands in dispute. To escape the binding force of these adjudications, it is argued that a new right of action has been created by the passage of the act of 1887; that this act is the foundation of the present proceeding, and therefore the prior adjudications upon the question of title do not bar a suit based upon a right coming into existence since these adjudications were had. The abstract proposition contended for may be correct, but it is not applicable to the facts of this case. The claim of Fairchild to the land is based upon his homestead entry made in 1866, of which final proof was made October 26, 1871, and for which a patent was issued to him September 26, 1876. It is clear that the United States parted with all the title to the land held by it when the act of 1871 was passed. The adjusting act of 1887 was not intended to apply to a case where an adjustment had previously been had between the state and the interior department, and which adjustment had been confirmed by an act of congress, and therefore it cannot be successfully maintained that the present bill is based upon a readjustment had under the provisions of the act of 1887. On the contrary, the pleadings and proofs show that the only purpose of the bill is to protect the homestead entry of Fairchild and the title based thereon, which right was reserved to Fairchild by the proviso attached to the act of 1871. The act of 1887 did not affect that title, nor create any new right of action in Fairchild or in the United States touching the same, and it follows that nothing in the provisions of that act in any way lessens or defeats the binding force of the adjudication against Fairchild in the cases already named. In the equity suit brought in 1876 it was open to the defendants therein, Fairchild and wife, to set up fully all the rights conferred on them by their homestead entry by the issuance of a patent for the lands, and all the rights reserved to them by the proviso in the act of 1871. The fact that the officials of the land department, after the issuance and delivery of the patent, coming to the conclusion that it had been wrongly issued, obtained it from Fairchild and mutilated it, did not destroy or weaken the title or right existing in Fairchild.

U. S. v. Schurz, 102 U. S. 378; Bicknell v. Comstock, 113 U. S. 149, 5 Sup. Ct. 399. In the latter case it appeared that the commissioner of the general land office, after a patent had been issued and sent to the local land office at Ft. Dodge, Iowa, for delivery to the patentee, Bicknell, ordered it to be returned, and thereupon tore off the seals and erased the president's name therefrom. It was held by the supreme court that this action of the commissioner was wholly nugatory, and that the patent remained in full force, the same as though no effort had been made to destroy or nullify it. It was therefore open to Fairchild and wife to plead the homestead title as a defense to the suit in equity and to the action in ejectment brought in the district court of Dickinson county. The records of these cases, which are in evidence, show that in the equity case the defendants pleaded their title based upon the homestead entry, and in the action in ejectment they filed an equitable answer and cross bill setting up the homestead entry, their title based thereon, and the issuance of a patent in confirmation thereof. In both cases the court held against them, and adjudged this title to be invalid as against that held by the Stuarts and their grantee, West. These adjudications are binding upon Fairchild, and upon any party who seeks to assert the validity of the homestead title as against the title held by the defendant West, and are a complete bar to the relief sought in this proceeding.

If, however, these adjudications had not been had, the facts disclosed in the evidence show that the relief sought is barred by the lapse of time. The homestead title claimed by Fairchild was completed by the furnishing of the final proof in October, 1871. At that time Fairchild, either in his own name or in that of the United States, could have brought an action in equity, similar to the present proceedings, to settle the title to these lands. The bill in this case was filed November 19, 1891, more than 20 years after the homestead entry had been perfected. The patent was issued September 26, 1876, more than 15 years before this suit was brought. This lapse of time not only fully supports the plea of the statute of limitation of the state of Iowa, which bars actions for recovery of realty in 10 years, but also supports the defense of laches. In the case of U. S. v. Des Moines Nav. & Ry. Co., 142 U. S. 510, 12 Sup. Ct. 308, which deals with the same grant as is involved in this case, it was held that the defense of laches, as well as a plea based upon the statute, was available against the United States when it appeared that the suit, though brought in the name of the United States, was in fact intended to benefit individual claimants of the land. Under the rule announced in that case and the others cited therein, it must be held that the lapse of time has been so great since the right to proceed in equity has been in existence that the proceeding is barred both by the statute and by the equitable rule that parties must be diligent in order to secure action in their behalf by a court of equity.

The case presents another illustration of the evils resulting to innocent people from the conflicting views entertained of the true scope of the grant in aid of the improvement of the Des Moines river, but the court is powerless to remedy the wrong done to the

defendant Fairchild without inflicting an equal injury upon the defendant West. One or the other must suffer a loss, and the court is not justified, in the effort to protect the former, in casting the burden upon the latter; it not appearing that he is in any manner accountable for the position which Fairchild occupies in relation to the land, and it affirmatively appearing that West's title to the land has been twice adjudicated by a court of competent jurisdiction to be superior to that of Fairchild. For these reasons the bill must be, and is hereby, dismissed.